**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1138-15T1

RICHARD WILLIAMS, EDDIE BROWN,
RASHEEN PEPPERS and TAIBU
THOMAS,

    Plaintiffs-Appellants,

v.

CITY OF NEWARK, NEWARK POLICE
DEPARTMENT, POLICE DIRECTOR
GARRY McCARTHY, DEPUTY CHIEF
KEITH RUBEL, DEPUTY CHIEF
SAMUEL DEMAIO, CAPTAIN RAUL
ESTEVEZ, CAPTAIN RONALD KINDER,
and SERGEANT JOHN SIINO,

    Defendants-Respondents.

_____

Argued November 8, 2017 — Decided November 28, 2017

Before Judges Fisher, Fasciale and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5682-10.

Lora B. Glick argued the cause for appellants.

James P. McBarron argued the cause for respondents (Hardin, Kundla, McKeon & Poletto, PA, attorneys; Mr. McBarron, on the brief).

PER CURIAM

Plaintiffs, who are African-American police officers, appeal from a September 4, 2015 order granting summary judgment to the City of Newark, Newark Police Department, Police Director Garry McCarthy, Deputy Chief Keith Rubel, Deputy Chief Samuel DeMaio, Captain Raul Estevez, Captain Ronald Kinder, and Sergeant John Siino; and a November 13, 2015 order denying reconsideration. Plaintiffs argue that the judge misapplied the law and entered summary judgment without giving reasons. In support of his order denying reconsideration, the judge rendered a thorough written opinion explaining the factual and legal basis for granting summary judgment.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Liu, 431 N.J. Super. 493, 497 (App. Div.), certif. denied, 216 N.J. 86 (2013). We owe no deference to the motion judge's conclusions on issues of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Applying these standards, we affirm for the reasons expressed by Judge Dennis F. Carey, III. We add the following remarks.

As off-duty police officers, plaintiffs drove to the Prudential Center to attend a concert. When they arrived in the parking lot, Williams, Brown, and Peppers left their weapons unsecured in Peppers's vehicle, in violation of departmental

rules.  Thomas maintained that he had left his weapon home, which the police verified after transporting him there.  Plaintiffs then entered the Prudential Center.

The Police Director immediately suspended Williams, Brown, and Peppers for leaving their weapons in the vehicle.  This suspension lasted for three days.  Internal Affairs then conducted its own independent investigation and separately charged them with violating departmental rules, acting in a manner unbecoming of police officers, and disobeying an order to secure their weapons at a command post.  An Administrative Law Judge (ALJ) upheld an initial determination that the officers violated departmental rules.  The Civil Service Commission adopted the ALJ's findings, and suspended Williams, Brown, and Peppers for six days.[1]  Thomas received no charges.

Plaintiffs alleged defendants discriminated against them, harassed them, and aided and abetted liability, in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49 (Counts One, Two and Three).   They further alleged defendants intentionally and negligently violated their civil rights, under the New Jersey Constitution, Article I, as codified by N.J.S.A. 10:6-2(c) (Counts Four and Five).  Plaintiffs pled

---

[1]  Plaintiffs did not file an appeal to us from the final agency decision by the Commission.

A-1138-15T1

additional causes of action for civil conspiracy (Count Six); false arrest (Count Seven); false imprisonment (Count Eight); malicious prosecution (Count Nine); intentional infliction of emotional distress (Count Ten); negligent infliction of emotional distress (Count Eleven); and as to Peppers, tortious interference with economic opportunity (Count Twelve).

As to the discrimination claims, plaintiffs opposed the summary judgment motion by arguing defendants disciplined them more harshly based on their race because the Police Director imposed an immediate suspension. On their reconsideration motion, plaintiffs expanded their contentions by focusing on the Commission's separate six-day suspension. They argued that such discipline constituted a disparate suspension length.[2]

Analysis of an NJLAD claim is based on the framework delineated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Jason v. Showboat Hotel & Casino, 329 N.J. Super. 295, 303 (App. Div. 2000). In general, a plaintiff must first demonstrate a prima facie case of discrimination; only then does the burden of producing evidence shift to the defendant to articulate some

---

[2] On either theory, Thomas's claim of disparate treatment is completely without merit. There is no credible evidence that race played a role in being driven home to confirm his weapon was there. Such an effort cleared Thomas from receiving discipline.

legitimate, nondiscriminatory reason for the action. Ibid. The plaintiff then has the opportunity to show that the defendant's stated reason was, in fact, pretext, or that the action in question occurred under circumstances which give rise to an inference of unlawful discrimination. Ibid. Evidence of pretext may be indirect, such as a demonstration that the employer did not treat similarly situated employees equally. Id. at 304. The ultimate burden of persuasion remains at all times with the plaintiff. Ibid.

As for disparate discipline cases, an extension of the paradigm of the alternating burdens of proof for claims of discriminatory employment-based discipline should be a starting line. Our courts have adopted the burden-shifting framework articulated in McDonnell Douglas for determining whether an employer has violated the NJLAD. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 166 (App. Div. 2005) (citing Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382 (1988) and Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 82 (1978)).

> [T]he court first determines whether plaintiff has produced sufficient evidence to demonstrate the elements of his or her prima facie case. If so, then the burden shifts to the employer to produce evidence of "legitimate, non-discriminatory reasons" that support its employment actions. Once the employer has done so, the burden shifts back

> to plaintiff to prove that the stated reasons were a pretext for discrimination.
>
> [Ibid. (citations omitted).]

It is well established that a prima facie case of discrimination requires a showing that: (1) plaintiff is a member of a protected class; (2) plaintiff was performing the job consistent with the employer's legitimate expectations; (3) plaintiff suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions. Maher v. N.J. Transit Rail Operations, Inc., 125 N.J. 455, 480-81 (1991); El-Sioufi, supra, 382 N.J. Super. at 167.

The burden then shifts to the defendant, and requires a demonstration of "a legitimate, nondiscriminatory reason for the employer's action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005). At this stage, there is no credibility or truth assessment; all the employer is required to show is that there was a legitimate explanation for its action. McDonnell Douglas, supra, 411 U.S. at 802-05, 93 S. Ct. at 1824-25, 36 L. Ed. 2d at 677-79. The employer "must come forward with admissible evidence of a legitimate, non-discriminatory reason for its rejection of the employee." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 210-11 (1999).

Thereafter, the burden swings back to the plaintiff to establish "by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." Zive, supra, 182 N.J. at 449. "To prove pretext, however, a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002). The employee

> does not qualify for a jury trial unless he or she can "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."
>
> [Zive, supra, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).]

One means of proving a pretext case is by showing disparate treatment. To prove disparate disciplinary treatment, a plaintiff must show:

> (1) That plaintiff was a member of a protected group;
>
> (2) That there was a company policy or practice concerning the activity for which he or she was discharged;

(3) That the non-minority employees either were given the benefit of a lenient company practice or were not held to compliance with a strict company policy; and

(4) That the minority employee was disciplined either without application of a lenient policy, or in conformity with the strict one.

[Jackson v. Georgia-Pacific Corp., 296 N.J. Super. 1, 21 (App. Div. 1996) (quoting E.E.O.C. v. Charles Schaefer Sons, Inc., 703 F. Supp. 1138, 1147 (D.N.J. 1988)), certif. denied, 149 N.J. 141 (1997).]

If the plaintiff fails to meet this obligation, the defendant is entitled to summary judgment. Zive, supra, 182 N.J. at 456. Defendants concede prongs one and two — plaintiffs were members of a protected class and the department disciplined them for violating departmental rules. Plaintiffs did not produce any credible evidence showing prongs three or four — that "non-minority employees . . . were given the benefit of a lenient company practice or were not held to compliance with a strict company policy" and that they were "disciplined either without application of a lenient policy, or in conformity with the strict one." Jackson, supra, 296 N.J. Super. at 21 (citation omitted).

Plaintiffs pointed to one unrelated incident involving six other officers in an attempt to show disparate disciplinary action. The six officers apparently worked as private armed security at an event in a hotel when they heard shots fired from a different

8

location in the same hotel. Two of the six officers were white, two were Hispanic, and two were African-American. The department suspended the white officers, who received the greatest punishment for failing to secure the shooting scene. The African-American officers received no suspensions. Furthermore, surveillance viewed days after the shooting confirmed the presence of the six officers at the hotel. Thus, unlike here, there was no opportunity to issue an immediate suspension disciplinary action. And certainly the conduct of the six officers had nothing to do with violating departmental rules by improperly storing weapons.

Plaintiffs refer for the first time to raw data from previous administrations purportedly showing disparate treatment, however, such an attempt is equally unpersuasive. The data, which we conclude is entirely lacking in credible probative value and is otherwise speculative, does not refer to immediate suspensions. Thus, it does not address the Police Director's decision to suspend plaintiffs for three days to maintain safety, health, and order. Furthermore, the data does not correlate factually to the separate Internal Affairs investigation, which took approximately two weeks to complete, resulting in a six-day suspension issued by the Commission.

As to the harassment claims, plaintiffs argue that the department retaliated against them by transferring them to

different positions after they voiced complaints of racial discrimination. The department transferred Williams from the Executive Protection Unit to the Criminal Investigations Bureau, Fourth Precinct. The department transferred Brown from the Public Safety Bureau to the Criminal Investigations Bureau, Second Precinct. The department recalled Peppers from the U.S. Marshals Service and transferred him to the Newark Fugitive Squad, and he purportedly lost a position on a law enforcement television show.

To prove a prima facie case of retaliation, a plaintiff must show that: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." Victor v. State, 203 N.J. 383, 409 (2010). Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a "legitimate[,] non-retaliatory reason" for the decision. Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 445 (App. Div. 1990). If the defendant satisfies this burden, the plaintiff must then demonstrate that a retaliatory intent, not the employer's stated reason, motivated the employer's action, proving the employer's articulated reason was merely a pretext for discrimination. Ibid. To recover for NJLAD retaliation, a

"plaintiff must also demonstrate that the original complaint was both reasonable and made in good faith." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013).

Here, plaintiffs have produced no credible evidence that "there is a causal link between the protected activity and the adverse employment consequence." Victor, supra, 203 N.J. at 409. A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 550 (App. Div. 1995). Temporal proximity may be considered as one factor demonstrating causal connection, but "no case . . . stands for the proposition that proximity is the only circumstance that justifies an inference of causal connection." Ibid.

Plaintiffs merely rely on temporal proximity, which is only marginally indicative of causation because the department issued the transfer orders thirteen days after Williams's complaint regarding racial discrimination. And the orders occurred around the same time as the disciplinary proceedings. Under the circumstances of this case, time alone is insufficient to prove a prima facie case of retaliatory motive.

Alternatively, plaintiffs contend they were subject to retaliatory harassment arising out of a hostile work environment. To sustain a claim of a retaliatory harassment, plaintiffs must

establish the employer's actions would not have occurred but for their protected activity, and the employer's conduct was sufficiently severe and pervasive that a reasonable person would believe that the conditions of their employment are altered and the working environment is hostile or abusive. Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993); see also Cutler v. Dorn, 196 N.J. 419, 430 (2008) (recognizing, "[a]lthough Lehmann involved sexual harassment in the workplace, Lehmann's test applies generally to hostile work environment claims").

Each plaintiff contends they were subject to a hostile work environment arising out of the department's response to their medical treatment. Peppers contends, in addition to his recall from the U.S. Marshals Service, that two members of the Newark Medical Services Division appeared at his psychiatrist's office while he was undergoing treatment.

Williams contends, in addition to his transfer, that he was followed to his medical examination appointments and that, on one occasion, two Newark Police Officers forcibly removed Williams from his home and transported him to an appointment. Brown also claims to have been followed to his psychiatric appointments.

"To establish a cause of action under the [NJLAD] based on a hostile work environment, plaintiffs must satisfy each part of a four-part test." Shepherd v. Hunterdon Developmental Ctr., 174

12

N.J. 1, 24 (2002). Plaintiffs "must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Ibid.

Here, plaintiffs are unable to demonstrate a prima facie case of hostile work environment. Plaintiffs acknowledge that defendants did not say or do anything overtly racial in their presence. And there is no evidence to the contrary. There is no support for the proposition that defendants pursued an Internal Investigation based on plaintiffs' race. Plaintiffs concede that transfers of posts occur frequently in the department, and that requests for medical examinations are insufficient to constitute severe or pervasive harassing conduct. At best, plaintiffs point to single isolated incidents to support their speculative claims of hostile work environment.

We next address plaintiffs' aiding and abetting claim. "[I]t is unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD],' N.J.S.A. 10:5-12[(e)], and such conduct may result in personal liability." Tarr v. Ciasulli, 181 N.J. 70, 83 (2004) (second and third alterations in original).

"[T]o hold an employee liable as an aider or abettor, a plaintiff must show that '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" Id. at 84 (second alteration in original) (citation omitted).

Here, there is no evidence of wrongful acts or knowledge of an overall illegal or tortious activity within the meaning of the NJLAD. The Police Director issued the immediate suspensions based on a preliminary investigation of what occurred the night of the concert. He concluded that immediate suspensions were mandated in part due to safety reasons and to ensure efficient running of the department. And the Commission upheld the ALJ's separate findings on which the department rule violations were based. There is no evidence to support a prima facie case of aiding and abetting under the NJLAD.

We conclude that plaintiffs' remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                    A-1138-15T1