**Drucy PALAO, Plaintiff,**

v.

**FEL–PRO., INC., Defendant.**

**No. 99 C 3020.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 20, 2000.

---

### *MEMORANDUM OPINION AND ORDER*

KENNELLY, District Judge.

Drucy Palao has brought suit against Fel–Pro, Inc., for violations of the Americans with Disabilities Act ("ADA"), Family Medical Leave Act ("FMLA"), and the Pregnancy Discrimination Act ("PDA").

Fel–Pro has moved for summary judgment on Palao's claims. It argues (1) that her ADA claim fails because she was not disabled as the statute defines that term; (2) that her FMLA claim fails because she exceeded the 12 weeks of leave allowed by law (thereby negating Fel–Pro's obligation to rehire her); and (3) that she failed to exhaust administrative remedies with regard to her PDA claim. For the reasons stated below, the Court agrees and grants Fel–Pro's motion for summary judgment as to all counts.

### Background

Palao began work at Fel–Pro in March of 1987. Fel–Pro manufactured gaskets and sealants in a facility in Skokie, Illinois, where Palao worked as an operator of various machines and as a parts inspector. On December 20, 1997, she was fired. Fel–Pro claims that Palao was fired for failing to return to work after 12 months. Palao claims that Fel–Pro refused to reinstate her in violation of the ADA, FMLA, and PDA because she had become disabled, taken medical leave, and become pregnant.

From 1987 until 1995, Palao worked as a machine operator and inspector, apparently without any physical difficulty. In 1995, Fel–Pro implemented a new management system, referred to as the "cell team concept of production." Under this system, employees rotated through several different positions. It was thought that the cell team concept improved morale by limiting monotony, reduced repetitive stress injuries, and made absences easier to cover. Palao was assigned to the STP cell. The different positions in the STP cell included four machine presses and an inspector position.

In late 1995, Palao's right shoulder began hurting. Her doctor diagnosed partial rotator tendinitis and recommended several restrictions: a 20 pound lifting limitation, limited use of her right arm, and no repetitive use of her right arm. As a result, Fel–Pro accommodated Palao by allowing her to work in the inspector position full-time, without rotating through the other positions. The other members of

her cell were therefore unable to rotate through all five positions and were limited to operating the four machine presses.

Palao's shoulder pain required her to undergo surgery, which took place on March 14, 1996. She returned to work approximately eleven weeks later, on June 7, 1996. At that time, her doctor's restrictions were as follows: no lifting of more than 15–20 pounds, no repetitive activity, no overhead work, and no pushing or pulling. Palao returned to work in the inspector-only position within the STP cell.

At some point shortly thereafter, Palao informed Fel–Pro that she was pregnant. Fel–Pro claims that Palao informed the company of this on June 10, 1996, when she asked to have her shifts changed, partly because of sleeping difficulties brought on by pregnancy. Palao claims to have told Fel–Pro prior to June 10, 1996 that she was pregnant and that she would be taking maternity leave beginning sometime in December, 1996.

Palao continued working in the inspector-only position under her doctor's restrictions until August 30, 1996. In early September, Fel–Pro's recruiter, Amy Fox, met with Palao to evaluate her qualifications and skills, apparently as part of an effort to place Palao in another position for which she was qualified. Fel–Pro maintains that the cell team concept involved the phasing out of the inspector-only position that Palao was filling. Palao accepted a temporary position in Quality Assurance with the understanding that it would run until her maternity leave commenced.

On November 26, 1996, Palao's doctor issued a work release stating that Palao's work restrictions were permanent in nature. Palao continued to work in Quality Assurance until December 20, 1996. Afterwards, she was on maternity leave until February 17, 1997. At that time, she attempted to return to work but was informed that there were no available positions for which she was qualified.

## Analysis

In considering whether there are genuine issues of material fact for trial, we are required to consider all evidence and draw all reasonable inferences in favor of Palao, the non-moving party. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In employment discrimination cases such as Palao's, this standard is applied strictly, as these cases often involve credibility issues typically reserved for a jury. *See Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994).

### 1. ADA Claim

■ By enacting the ADA, Congress intended, among other things, to eliminate employment discrimination against disabled persons who are qualified to work. 42 U.S.C. § 12101(b); H.R.Rep. No. 101–485(II), at 32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 314 (reporting "staggering levels of unemployment" among individuals with disabilities). To establish disability discrimination, Palao must show that (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job either with or without reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir.2000).

Palao's threshold burden is to establish that she is disabled as that term is defined in the ADA. *Id.* (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995)). Congress defined "disability" in the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). This somewhat ambiguous statutory language has been extensively supplemented by regulations and judicial decisions. *Major* life activities include, among other things, the function of working. 29 C.F.R. § 1630.2(i). Being *substantially* limited in the major life activity of working requires that a person be "sig-

nificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* § 1630.2(j)(3)(i). The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working. *Id.* The impairment must substantially limit employment generally. *See Patterson v. Chicago Association for Retarded Citizens,* 150 F.3d 719, 724–25 (7th Cir.1998). Palao has the burden of presenting evidence tending to show that her impairment limited her from performing an entire class or broad range of jobs. *See Sinkler v. Midwest Property Management,* 209 F.3d 678, 685 (7th Cir. 2000). This burden is not an onerous one, *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 507 (7th Cir.1998), and this court must engage in an individualized analysis of Palao's disability, qualifications, and work history. *DePaoli v. Abbott Labs.,* 140 F.3d 668, 672 (7th Cir.1998) (citing *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995)).

In its motion for summary judgment, Fel–Pro misstates Palao's burden. It argues, for example, that "Palao must prove on these facts that her condition substantially limits a major activity" and that Palao must offer "admissible vocational evidence" of the number of jobs in the Chicago area from which she is disqualified because of her impairment. Memorandum of Law in Support of Defendant's Motion for Summary Judgment, pp. 3, 5.

■ Palao's burden at summary judgment is not this onerous. She does not have to prove her case at summary judgment; rather, she must offer evidence from which a fact-finder could reasonably infer that her major life activity of working is substantially impaired. And it is simply not the case that ADA plaintiffs must hire experts or provide statistics that detail the precise diminution in their employability for similar jobs in their geographical area.

In fact, the EEOC regulations under the ADA only suggest that such information "*may* be considered in determining whether an individual is substantially limited in the major life activity of 'working.'" 29 C.F.R. § 1630.2(j)(3)(ii) (emphasis added). By contrast, the EEOC regulations recommend other factors that "*should* be considered in determining whether an individual is substantially limited in a major life activity," namely "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (emphasis added).

The case law does not go further than the EEOC regulations. No case in this circuit has required a plaintiff to produce direct evidence of geographical vocational disqualification in order to survive summary judgment or to prevail at trial. Indeed, plaintiffs who have presented only their doctor's working restrictions have met their burden at summary judgment of showing that a fact-finder could reasonably infer that they were disabled. *DePaoli,* 140 F.3d at 673 (7th Cir.1998) (holding that a plaintiff with tendinitis was barred from a broad range of jobs: those assembly line jobs that require repetitive motion); *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir.1996) (finding that a doctor's physical restrictions, including no overhead work, heavy lifting, or pulling and pushing out, "might apply to a broad range of jobs, and are more than job specific"). In reversing a summary judgment for the defendant in *Best v. Shell Oil Co.,* 107 F.3d 544 (7th Cir.1997), the Seventh Circuit held that testimony from a doctor and evaluator regarding the plaintiff's serious and perhaps permanent knee injury was sufficient for a fact-finder to reasonably infer that he was substantially limited in his major life activity of working. *Id.* at 548. None of these cases required the direct geographical vocational evidence as-

serted by Fel–Pro to be a necessary element of Palao's burden.

Other Seventh Circuit cases relied upon by Fel–Pro are distinguishable from Palao's case. In *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667 (7th Cir. 1998), the Seventh Circuit analyzed the disability claims of "production associates." The court found that the plaintiffs had met their burden by producing testimony from an expert who specified the percentage reduction in each plaintiff's employability in a broad range of jobs of various classes within Tippecanoe County, Indiana. *Id.* at 676. However, the *Dalton* decision does not mandate this level of evidence. The court also cited the plaintiffs' "own testimony about the effect of their disabilities on their work" and relied on their testimony in finding that they were substantially impaired in their life activity of working. *Id.* Similarly, in *Skorup v. Modern Door Corp.*, 153 F.3d 512 (7th Cir.1998), the Seventh Circuit "[did] not require that plaintiffs establish the precise percentage of jobs their impairment precludes them from performing." *Id.* at 515. The *Skorup* court only demanded that plaintiffs produce evidence from which a court can determine "general guideposts, such as whether her impairment forecloses her from accepting few, many, or most of the jobs in a particular class or broad range of classes." *Id.*

District court decisions that purport to require geographical vocational evidence, such as *Matthews v. TCI of Illinois*, No. 95–C4096, 1996 WL 332693 *3 (N.D.Ill. June 14, 1996) (suggesting that plaintiffs with back injuries and lifting restrictions "must go further, offering evidence that these restrictions, in light [their] training, skills, vocational opportunities, geographical limitations, and the like, significantly impede [their] ability to find a job"), are not dispositive. *See Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (Posner, J.) ("Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness mer-

its."). Other judges of this court have denied summary judgment where the plaintiff had no such evidence. In *Stensrud v. Szabo Contracting Co.*, No. 98–C878, 1999 WL 592110 at *5 (N.D.Ill. Aug.2, 1999), Judge Gettleman allowed a plaintiff to avoid summary judgment based upon a doctor's notes and an admission by the defendant that the plaintiff could not drive during his recovery period. In *Konewko v. Village of Westchester*, No. 99–C7277, 2000 WL 1038125 (N.D.Ill. July 25, 2000), Judge Conlon denied summary judgment, focusing on the 29 CFR § 1630.2(j)(2) factors—those relating to permanence and severity—without even mentioning the geographical factors suggested by § 1630.2(j)(3)(ii). And Judge Castillo, in *Garza v. Abbott Labs.*, 940 F.Supp. 1227 (N.D.Ill.1996), expressly rejected the argument that a plaintiff's failure to produce geographical vocational evidence would require summary judgment for the defendant. *Id.* at 1237 & n. 12 ("A plaintiff's failure to come forward with evidence that merely 'may be considered' should not ordinarily require dismissal of her case.") (citing *Leslie v. St. Vincent New Hope, Inc.*, 916 F.Supp. 879, 885 (S.D.Ind.1996)).

Though it is true that in *Bragg v. Tri Lite, Inc.*, No. 97–C1138, 1999 WL 965419 (N.D.Ill. Sept.30, 1999), Judge Gottschall granted summary judgment against a plaintiff who had failed to produce geographic vocational evidence of the number of secretarial jobs from which she was disqualified, *id.* at *6, her opinion makes it plain that *Bragg's* complaint also failed to meet the ADA standard under the permanence and severity factors listed in the EEOC regulations as factors that *should* be considered. In fact, Judge Gottschall described *Bragg's* back injury as a "minor inconvenience" that lasted six days. This is a far cry from the permanent disability presented here. In sum, when a plaintiff presents no evidence of the factors that the EEOC regulations say should be considered, failure to produce evidence of the

optional factors found in the regulation might indeed be dispositive. But when a plaintiff presents evidence of the severity and permanence of her impairment from which it can be inferred that the impairment limited her from performing a broad range or entire class of jobs, her failure to specify geographic vocational evidence is likely to be of little or no significance.

■ Given this understanding of Palao's burden, we turn to her evidence. In her brief opposing summary judgment, Palao argues that it is "wholly contradictory for Defendant to say it had no work for Plaintiff that Plaintiff could perform and then later say that Plaintiff was not disabled and substantially limited from employment with Defendant." P. 3–4. This argument conflates two different standards (Fel–Pro's discretion and the ADA definition of "disability") and ignores the fact that it is Palao's burden to show that she has a disability. In her brief, Palao states that her "right shoulder condition is a qualified statutory disability . . . as it disqualifies Plaintiff from work that she customarily performed prior to the onset of said condition. . . ." P. 2–3. This argument ignores controlling authorities that make it clear that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 2139, 144 L.Ed.2d 484 (1999) (holding that evidence of a plaintiff being "regarded as unable to perform only a particular job . . . is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the major life activity of working").

■ Similarly, the work restrictions imposed by Palao's doctor are not enough to meet her burden at this stage. While Palao's shoulder injury is permanent, she has not shown that it is either severe enough or would have a "long term impact" sufficient to substantially limit her major life activity of working. 29 C.F.R. § 1630.2(j)(2). Palao has made no attempt to advance a theory under which a jury could find that her shoulder injury significantly restricts her "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Because Palao has not met her burden, the Court grants Fel–Pro's motion for summary judgment on her ADA claim.

### 2. FMLA Claim

Under the Family and Medical Leave Act, an eligible employee receives twelve workweeks of leave during any 12–month period for, among other things, a birth of a child or because of a serious health condition. 29 U.S.C. § 2612(a)(1). An employer has no responsibility to restore a person's job if that twelve week period is exceeded.

■ In this case, it is undisputed that Palao exceeded 12 weeks of leave during a 12–month period. It is irrelevant that Palao took 11 weeks of disability leave for shoulder surgery, worked for approximately five months, and then took 8 weeks of maternity leave. The statute entitles an employee to a *total* of 12 workweeks of leave per 12–month period. Accordingly, Fel–Pro's motion for summary judgment is granted as to Palao's FMLA claim.

### 3. PDA Claim

Palao claims that Fel–Pro refused to reinstate her and later fired her because she returned from disability leave three months pregnant. It appears that she is alleging that Fel–Pro retaliated against her for getting pregnant and taking excessive leave.

■ Regardless of whether Palao's case could be viable, we must dismiss her PDA claim. Exhaustion of administrative remedies is a necessary predicate to an action under the Pregnancy Discrimination Act. 42 U.S.C. § 2000e–5(f)(1) (establishing 90–

day deadline for filing a civil action following exhaustion of remedies); *Zugay v. Progressive Care, S.C.,* 180 F.3d 901, 902 (7th Cir.1999). It is undisputed in this case that Palao's initial complaint to the Illinois Department of Human Rights (IDHR) claimed discrimination based solely on her disability. Palao checked "disability" on the requisite form, leaving "sex," "retaliation," and "other" blank. Furthermore, her comments on the form apply solely to her physical handicap. For example, she stated, "I am a handicap [sic] individual as defined by the Human Rights Act."

 When an administrative charge alleges a particular type of discrimination, allegations of a different type of discrimination in a subsequent lawsuit are not reasonably related to the charge and therefore may not be maintained unless the lawsuit's allegations can be reasonably inferred from the facts alleged in the charge. *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 504 (7th Cir. 1994). Palao's allegations of pregnancy discrimination seek redress based on Fel-Pro's alleged animus towards her status as a pregnant woman. Her complaint to the IDHR, however, alleges only that she was "denied a return to work from maternity leave on February 14, 1997, because of [her] physical handicap/disability mobility impairment (right shoulder injury)." Her PDA claim is not like or reasonably related to the claim she made in her administrative charge. The court concludes that Palao did not exhaust her administrative remedies with regard to her PDA claim.

### Conclusion

In summary, Fel-Pro's motion for summary judgment is granted as to all counts. The clerk is directed to enter judgment in favor of defendant.