**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3137-21

LAURA GERMINARIO,

      Plaintiff-Appellant,

v.

WESTWOOD REGIONAL BOARD
OF EDUCATION, RAYMOND
GONZALEZ, individually,
and THOMAS CONROY,
individually,

      Defendants-Respondents,

and

LAUREN MAGNIFICO,
individually,

      Defendant.

_____

      Argued November 15, 2023 – Decided December 22, 2023

      Before Judges Accurso, Vernoia and Gummer.

      On appeal from the Superior Court of New Jersey,
      Law Division, Bergen County, Docket No. L-4035-20.

Randy T. Pearce argued the cause for appellant (Pearce Law LLC, attorneys; Randy T. Pearce, of counsel and on the briefs; Christopher Oswald Eriksen and William Robert Fenwick, on the briefs).

Erin Donegan argued the cause for respondents (Anderson & Shah, LLC, attorneys; Roshan D. Shah, of counsel and on the brief; Erin Donegan, on the brief).

PER CURIAM

Plaintiff Laura Germinario appeals from summary judgment dismissing her complaint for age discrimination in violation of the Law Against Discrimination, N.J.S.A. 10:5-1 to -50, and breach of contract against defendants Westwood Regional Board of Education, Superintendent Raymond Gonzalez, and Principal Thomas Conroy.[1]  We affirm.

---

[1]  We address here two matters relating to plaintiff's notice of appeal.  First, defendant is correct that plaintiff filed her notice prematurely as matters relating to defendant's application for attorney's fees were still pending in the trial court.  See Hudson v. Hudson, 36 N.J. 549, 553 (1962) (noting a direct appeal does not lie "unless final judgment has been entered disposing of all issues as to all parties").  Those issues have since been resolved, and we exercise our discretion to grant leave to appeal to reach the merits of the parties' dispute.  See Grow Co., Inc., v. Chokshi, 403 N.J. Super. 443, 463 (2008).  Second, although plaintiff included other orders dismissing other claims in her notice of appeal, she has limited her brief to the dismissal of her LAD and breach of contract claims.  We thus deem any other claims abandoned.  See 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) (noting "an issue not briefed is deemed

2

The essential facts are undisputed and easily summarized. We present them in the light most favorable to plaintiff and give her the benefit of all legitimate inferences in support of her claims. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Germinario, a school aide at Brookside Elementary, was also employed part time by Kristin Pedersen to provide afterschool care to her eight-year-old daughter Emma.[2] Germinario was at the playground with Emma on Wednesday, October 2, 2019, when they ran into Emma's best friend Amy and her mother Lauren Magnifico. The girls wanted a playdate, and Magnifico told them she would speak with Pedersen, Emma's mother. When Germinario dropped Emma at home, Germinario told Pederson of the encounter and that Magnifico would be reaching out to her about scheduling a playdate.

Magnifico and Pedersen exchanged texts later that evening about potential playdates the following week. They agreed on either Monday, October 7, 2019, or Thursday, October 10, 2019. Magnifico suggested they

---

waived"). N.J. Dept. of Env'l Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 (App. Div. 2015).

[2] The children's names are fictitious. We employ them in accordance with the trial court's order redacting the names of the minor children to protect their privacy.

A-3137-21

"aim for" Thursday, but she could make Monday work, if necessary. Germinario admitted she did not see those texts. Nevertheless, she claimed Pederson informed her the following day, Thursday, October 3rd, that "they were shooting for Monday to have the playdate, but if it wasn't Monday then it would be Thursday."

Germinario didn't ordinarily work for Pedersen on Fridays or over the weekend. She admitted she never had a follow-up conversation with Pedersen about what day she and Magnifico finally decided the girls would get together the following week. Pedersen and Magnifico both testified they never chose a day.

On Monday, Amy's teacher released her just before the normal dismissal time, as per the school's usual practice of allowing siblings to meet up a few minutes before the bell so they could leave school together. Instead of meeting up with her siblings, however, Amy went to Emma's class. Germinario was waiting for Emma in the hallway just inside the school door when Emma's teacher came down with her class. When Germinario went to collect Emma, Amy was standing next to her. Germinario claimed the teacher told her "[Amy] was going home with [Emma]." Germinario responded, "oh, yes, I guess today must be the day then, referring back to we're shooting for Monday,

4

but if it doesn't happen Monday the alternate day would be Thursday, so I had no reason to doubt my instructions from [the teacher]."[3]

As they were leaving, the trio passed Principal Conroy, who Germinario claimed was "joking with us, and then with the flick of the hand he tells us get out of here and that was it." The principal confirmed Germinario's account, testifying he usually stood outside at dismissal to make "some kind of silly, stupid comment to the kids to try to make them laugh" and could very likely have said "get out of here" to Emma and Amy as they were leaving with Germinario that day. Principal Conroy testified he was unaware Germinario didn't have permission from Magnifico to take Amy home. It didn't strike him as unusual, however, that Amy would be going home with Emma "because that happens all the time around here; people take other kids home."

Amy's grandmother was scheduled to pick up the Magnifico children from school that Monday. When she couldn't find Amy, she went to the office

---

[3] The teacher's testimony was different. She claimed Germinario asked her whether she was supposed to take Amy home along with Emma. The teacher testified she told Germinario "that's what the girls are saying, but I actually don't know; [Amy's] not a student in my class." We accept Germinario's recollection of the incident as accurate. Our endorsement of Germinario's version of the facts, however, does not extend to the assertion in her brief that she had Magnifico's consent to take Amy to Emma's house for the playdate. That assertion is not supported by competent evidence in the record.

A-3137-21

with Amy's older sister and younger brother, both students at Brookside, to ask where she was. Amy's teacher, summoned from a faculty meeting, reported he'd released Amy from class shortly before the bell as usual. The teacher had not been advised of any special arrangement for her release.

As the teacher and Amy's older sister went to search the playground, he asked if Amy had any "certain friend that she hangs out with." Amy's sister mentioned Emma, and that Germinario drove her home most days. The two returned to the office, where the teacher obtained Germinario's phone number. On speaking to Germinario, he learned Amy was with Germinario at Emma's house and informed the school and Amy's grandmother.

Germinario testified that shortly after arriving at Pedersen's with Emma and Amy, Germinario got a call from Amy's teacher. A half hour later, the doorbell rang. Magnifico was there, very angry, to pick up Amy. According to Germinario, she tried to calm Magnifico down, explaining that Amy had been with Emma's teacher as school let out. Germinario claimed Magnifico was not angry at her but at her daughter and the teachers for not following dismissal instructions. Germinario admitted, however, that she was still at Pedersen's when Magnifico called Pedersen and threatened to call the police on

6

Germinario, in a conversation that "was the complete opposite of the way she spoke with [Germinario] when she came to pick up [Amy]."

The School District initiated an investigation of the incident, and a week later, on October 15, Germinario received a letter from the superintendent advising he was recommending the Board terminate her employment in thirty days in accordance with the terms of her contract. The notice of termination informed Germinario the superintendent's recommendation was based on her having violated Board Policy 4281 prohibiting staff from transporting a student in their car without approval of the principal and the child's parent. The letter, which was hand-delivered by the principal, advised Germinario the Board would consider the recommendation in two days' time at its October 17 scheduled meeting, and that she was being relieved of her duties immediately.

Because Germinario was distraught over having been ordered to leave school immediately, Principal Conroy authorized Emma's release from class twenty minutes early so Germinario could drive her home. Emma, however, was supposed to remain on the grounds for an after-school program, and thus the principal had improperly released Emma without her parents' consent. Pedersen confronted the principal the following day, who acknowledged the error and apologized for his actions. Although the superintendent

7

acknowledged Emma was released to a person authorized to take her home, he nevertheless found the principal had violated "prescribed procedures which require parental permission" for early dismissal and placed a letter of reprimand in the principal's personnel file.

The Board voted to terminate Germinario's employment at its meeting, advising her by letter the following day that her employment would end effective November 14, 2019. Germinario, who was first hired by the Board in 2013 when she was fifty-six years old, was terminated when she was sixty-three. The Board subsequently hired a thirty-year-old woman to replace Germinario as an aide at Brookside Elementary.

After hearing argument, the trial court granted defendants' motion to dismiss the complaint on summary judgment. The court rejected Germinario's claim she'd established a prima facie case, and that age made a difference in her termination because other similarly situated younger staff were not fired despite their actions that resulted in Germinario taking Amy to Emma's house for the playdate. Specifically, the court found it "illogical" that the members of the Board, the majority of whom were over forty, who would hire Germinario when she was fifty-six years old and renew her contract six times, the last time when she was sixty-three, would fire her a few months later based

A-3137-21

on her age.  See Young v. Hobart W. Grp., 385 N.J. Super. 448, 461 (App. Div. 2005) (noting it "illogical to suggest" a decisionmaker "would promote [the] plaintiff . . . and then recommend and approve her termination because of her age only a few months later").

The court also rejected that any of the other employees — even the principal who released Emma to Germinario the day she was fired, when Emma was to remain on the school grounds — were similarly situated to Germinario.  The court found the principal allowing Emma to leave school with Germinario, "who was expressly authorized to take [Emma] home from school," was not comparable to Germinario removing Amy from school grounds without her parents' permission and did not support an inference of age discrimination.

The court found it undisputed Germinario was never advised by either Pedersen or Magnifico that the girls were to have a playdate on the day she took Amy from school.  The court concluded Germinario's removal of an eight-year-old child from school grounds in her car without permission from the child's parent in violation of express school policy provided the Board a legitimate non-discriminatory reason for termination, even accepting that Emma's teacher told Germinario that Amy was going home with Emma, and

9

the principal told the kids to "get out of here" as Germinario walked them to the parking lot. The court noted the teacher was not Amy's teacher and Germinario admitted the principal only bantered with the children as they left; he plainly had not provided her permission to drive Amy to Emma's house absent permission from Amy's mother. The court found Germinario's efforts to shift blame to others by comparing her actions to theirs, although none were remotely similar, was not sufficient to carry her burden to present evidence of pretext.

As for Germinario's breach of contract claim, the court found the absence of a signed contract for the 2019-2020 school year did not mean the terms of the contract the Board sent to Germinario for signature were not binding, given the circumstances. It was undisputed the Board sent the contract, which provided for a twenty-five-hour work week, to Germinario to sign. Germinario did not sign the contract. Instead, she returned it to the Board with a hand-written note to the effect that Principal Conroy had confirmed she would work 27.5 hours each week.

Although neither party signed the modified contract, both agree Germinario worked, and was paid for, 27.5 hours per week. The court found the parties' performance constituted acceptance of the modified agreement,

10

making the terms binding.  See Synnex Corp. v. ADT Sec. Servs, Inc., 394 N.J. Super. 577, 585 (App. Div. 2007) (noting if a party which has not signed the contract "indicates its unqualified acceptance in some other manner, such as by performance in accordance with the contract, the parties will be bound by the contract").  As the agreement plainly provides that either party could terminate on thirty days' written notice, and there was no dispute that Germinario received her thirty-day notice on October 15, and was paid through November 14, the court found the Board had not breached Germinario's contract by terminating her in the manner it did.

Germinario appeals, contending the trial court erred in concluding she did not establish a prima facie case of age discrimination and did not produce "ample and abundant record proofs of disparate treatment that conflict with and undermine the credibility of defendants' claimed justification for terminating" her.  She also contends the court erred in concluding there was no dispute of fact over whether she had Magnifico's consent to take Amy to Emma's house for the scheduled playdate.  Finally, Germinario claims her revised employment contract is enforceable and "it is undisputed" the Board breached the contract "by failing to give her the requisite thirty-day notice of

11

her termination."[4]  We are not persuaded the court erred in granting summary judgment on both Germinario's LAD and breach of contract claims on this record.

We review a grant of summary judgment applying the same standard as the trial court.  Stewart v. N.J. Turnpike Auth., 249 N.J. 642, 655 (2022). Thus, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill, 142 N.J. at 536). In considering application of the LAD to the facts adduced on the motion, our review is de novo without deference to any interpretive conclusions we believe mistaken.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

_____

[4] Germinario also claims the court erred in dismissing her aiding-and-abetting claims against defendants Gonzalez and Conroy because plaintiff failed to plead them.  Her argument on this point is without sufficient merit to address here.  See R. 2:11-3(e)(1)(E).  In addition to failing to plead the claims, Germinario did not oppose Gonzalez and Conroy's motion for summary judgment on all claims.  And because we conclude the court was correct to dismiss Germinario's LAD claim on summary judgment, an aiding-and-abetting claim would not lie in any event.  See Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (explaining an aiding and abetting claim requires proof the entity the defendant aids must perform a wrongful act causing injury).

Our courts review claims of discrimination under the LAD premised on indirect evidence using the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 546 (2013). In a suit alleging unlawful age discrimination under the LAD, a plaintiff's prima facie case consists of demonstrating: "(1) she belongs to a protected class; (2) she performed her job at a level that satisfied [her employer's] legitimate expectations; (3) she was discharged; and (4) she was replaced by 'a candidate sufficiently younger to permit an inference of age discrimination.'" Young, 385 N.J. Super. at 458 (quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 210-13 (1999)).

Once plaintiff establishes her prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005). If the employer does so, thus overcoming the presumption of discrimination, the burden shifts back to plaintiff to prove the employer's proffered reason for the termination was merely a pretext for discrimination; that is, that the employer's "proffered reason was not the true reason" for the decision. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 256 (1981); Sisler, 157 N.J. at 211. "She may succeed in this either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256.  Critically, "[a]lthough the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional discrimination."  Sisler, 157 N.J. at 211.

We do not agree with the trial court that Germinario failed to establish a prima facie case of age discrimination.  See Meade v. Tp. of Livingston, 249 N.J. 310, 329 (2021) (explaining "[t]he evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent — i.e., that discrimination could be a reason for the employer's action.'") (quoting Zive, 182 N.J. at 447). Germinario at sixty-three was plainly a member of "the presumptive protected class under the anti-age-discrimination provisions of the LAD," Sisler, 157 N.J. at 217; defendants do not dispute she was performing her job at a satisfactory level; she was indisputably terminated; and she was replaced by a woman at least thirty years her junior, certainly "sufficiently younger to permit an inference of age discrimination."  Id. at 213 (quoting Kelly v. Bally's Grand, Inc., 285 N.J. Super. 422, 429 (App. Div. 1995)).

14

The trial court had no difficulty accepting plaintiff had established the first three elements of her prima facie case, but found, incorrectly in our view, that she'd failed to establish the fourth element, analogizing plaintiff's proofs on that prong to those we rejected in Young, where we observed it would be "illogical to suggest" an employer who promoted an employee would only several months later terminate her employment on account of her age. 385 N.J. Super. at 461. Although it is certainly true that plaintiff was both hired and fired while a member of the protected class, Young is inapposite because the plaintiff there was not replaced by another employee as Germinario was here. 385 N.J. Super. at 459-60.

The plaintiff in Young attempted to establish the fourth prong of her prima facie case under Petrusky v. Maxfli Dunlop Sports Corp., 342 N.J. Super. 77, 82 (App. Div. 2011) (finding replacement by a younger person was not the only way to satisfy the fourth prong of a prima facie case of age discrimination). We held in Petrusky that a plaintiff could establish the fourth element of a prima facie case even if he'd not been replaced by another employee, so long as he could show his "age, in any significant way, 'made a difference' in the treatment he was accorded by his employer," thereby establishing an inference of discrimination. Ibid. Judged in the context in

15

which it was made, our comment in Young about the illogic of an employer promoting an employee and shortly thereafter firing her on account of her age cannot be read to suggest a plaintiff who can establish she was replaced by an employee thirty years' younger has fallen short on her fourth-prong proofs.

Germinario's case founders not on her prima facie case, but on her inability to produce any competent evidence that the Board's ostensible reason for her termination — that she violated school policy by putting Amy in her car and driving her to Emma's house without the Magnificos' permission — was a pretext for invidious age discrimination. See Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002) (holding "[t]o prove pretext . . . a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent").

Germinario's argument that the Board's reason for terminating her was pretextual rests on her claim that she had Magnifico's consent to drive Amy to Emma's house for a playdate on that Monday, and even if she didn't, both Amy's and Emma's teachers and the principal, all of whom were younger than she, also violated the rules and were not dealt with as harshly.

First, we reject out of hand Germinario's assertion she had Magnifico's permission to drive Amy to Emma's house for the scheduled playdate or that

16

she'd raised a genuine factual dispute on that point sufficient to defeat summary judgement. See James Talcott v. Shulman, 82 N.J. Super. 438, 443 (App. Div. 1964) ("Mere sworn conclusions of ultimate facts, without material basis . . . are insufficient to withstand a motion for summary judgment."). All the proof is otherwise.

Nothing better illustrates the point than Germinario's own account of her response to Emma's teacher telling her that Amy was going home with Emma, "oh, yes, I guess today must be the day then, referring back to we're shooting for Monday, but if it doesn't happen Monday the alternate day would be Thursday." Germinario's "guess" or surmise that Magnifico had consented to have Germinario drive Amy to Emma's house that afternoon did not create a genuine dispute of fact over whether Germinario had obtained that consent on this record and thus whether she violated the policy prohibiting a staff member from transporting a student in their car without approval of the child's parent. See Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 24-28 (App. Div. 2021) (discussing appropriateness of summary judgment on claim of apparent authority to waive child's personal injury claims where no proof presented of parent's actual consent to waiver).

Second, we agree with the trial judge that even viewing the facts indulgently, Germinario's conduct in driving a child off school grounds without her parent's consent is simply not comparable to the missteps of the teachers and the principal. See Jason v. Showboat Hotel & Casino, 329 N.J. Super. 295, 306-07 (2000) (explaining "[a] disparate treatment claim with regard to discipline requires comparison between the defendant's conduct toward plaintiff and other members of the protected class on one hand, and similarly situated employees not within the protected class on the other"). Even more to the point, Germinario adduced no proof whatsoever that the difference in the discipline she received as compared to that meted out to the principal — who also released a child without the parents' permission, albeit to someone the parents had approved to pick up their child — was motivated by invidious age discrimination. See Sisler, 157 N.J. at 211 (explaining the employee's burden at the third stage of the McDonnell Douglas paradigm is to produce proof that age made a difference in the decision).

Simply stated, Germinario offered no proof that had she been younger she would not have been fired. Offering proof a termination is unfair is not the same as proving it's the product of illegal discrimination. See Erickson v. Marsh & McLennan Co., 117 N.J. 539, 561 (1990) (explaining an "employee

18

can be fired for a false cause or no cause at all. That firing may be unfair, but it is not illegal.").

Germinario's breach of contract claim requires only brief comment. The law is well-settled that "[a] counteroffer operates as a rejection because it implies that the offeree will not consent to the terms of the original offer and will only enter into the transaction on the terms stated in the counteroffer." Berberian v. Lynn, 355 N.J. Super. 210, 217 (App. Div. 2002), aff'd, 179 N.J. 290 (2004). Applying that law here, Germinario's modification of the contract would constitute a counteroffer and a rejection of the contract offered by the Board. Given the Board never accepted Germinario's counteroffer, the parties proceeded without a contract, and thus Germinario was an at-will employee terminable without notice. See Lapidoth v. Telcordia Techs., Inc., 420 N.J. Super. 411, 420 (App. Div. 2011) ("Absent a contract providing otherwise, employment in New Jersey is at-will.").

Accepting Germinario's view, adopted by the trial court, that the parties signified their assent to the modified contract by their performance, see Synnex, 394 N.J. Super. at 585, the record establishes Germinario received the thirty-days' notice to which she was entitled under its terms. Germinario's contention that the superintendent's October 15 "Notice of Termination" was

not notice because it was not sent by her employer, the Board, the superintendent was without the ability to form an "intention to terminate" as his power was limited to recommending her termination, and the Board's intent to terminate could not be known until it voted to terminate on October 17, of which she was not apprised until October 21, thereby providing her only twenty-four days' notice, is meritless.

Our charge is to read contract provisions "as a whole, without artificial emphasis on one section, with a consequent disregard for others." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000), aff'd, 169 N.J. 135 (2001). "Literalism must give way to context." Ibid. The contract allowed either party to terminate their agreement at any time by giving the other party "30 days' notice in writing of intention to terminate." As the Board unquestionably provided written notice to Germinario on October 15, 2019, and paid her through November 14, we are satisfied the notice provided fulfilled the intent of the parties as expressed in their contract.

As our review of the record leaves us convinced summary judgment was appropriate on this record, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3137-21